UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ALFRED CARONIA and DOROTHY
SCIALLO,

                Plaintiffs,

     -against-                          **MEMORANDUM AND ORDER**
                                          13-CV-5758 (FB) (LB)
UNITED STATES OF AMERICA, JAZZ
PHARMACEUTICALS, INC., ORPHAN
MEDICAL, INC., HHS SPEC. AGENT
JOSEPH GIAMBALVO, FBI SPEC.
AGENT ANDREW SHAPIRO, and
UNKNOWN FEDERAL AGENTS JOHN
DOES 1, 2 and 3,

                Defendants.
------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*                          *For the Defendants:*
THOMAS F. LIOTTI, ESQ.           VARUNI NELSON, ESQ.
Law Offices of Thomas F. Liotti     Assistant United States Attorney
600 Old Country Road, Suite 530     Eastern District of New York
Garden City, NY 11530               271 Cadman Plaza East
                                                  Brooklyn, NY 11201

                                                  ANDREW B. JOSEPH, ESQ.
                                                  Drinker Biddle & Reath LLP
                                                  500 Campus Drive
                                                  Florham Park, NJ 07932

**BLOCK, Senior District Judge:**

     This action arises out of a federal investigation into the promotion of the drug

Xyrem for "off-label" uses not approved by the Food and Drug Administration (the "FDA"). Although Plaintiffs Alfred Caronia ("Caronia") and Dorothy Sciallo[1] ("Sciallo") (collectively, "plaintiffs") propound numerous theories of liability, their claims can be classified into three categories: (1) New York tort claims against the United States of America ("United States") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 *et seq.*, based upon the alleged conduct of HHS Special Agent Joseph Giambalvo ("Giambalvo") and FBI Special Agent Andrew Shapiro ("Shapiro") during the federal investigation; (2) federal constitutional claims against Giambalvo and Shapiro pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); and (3) New York tort claims against Caronia's former employers Orphan Pharmaceuticals, Inc. ("Orphan") and Jazz Pharmaceuticals, Inc. ("Jazz") based on diversity of citizenship.[2]

All defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) for

---

[1] Sciallo is Caronia's wife and asserts spousal derivative claims.

[2] Without taking a position, plaintiffs argue that either California or New York law applies to their tort claims against Jazz and Orphan. "When a federal court sits in diversity, it applies the choice of law rules of the forum state . . . ." *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014). Under New York law, a choice of law analysis is only required "[w]here the applicable law from each jurisdiction provides different substantive rules . . . ." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). Because the parties have not identified any differences between California and New York law, the Court will apply New York law. *See Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("In the absence of substantive difference . . . a New York court will dispense with choice of law analysis; and if New York is among the relevant choices, New York courts are free to apply it.").

failure to state an actionable claim.  The federal defendants also move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  For the reasons that follow, the FTCA claims predicated on Shapiro's alleged conduct are dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.  Plaintiffs' remaining claims are dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.   Background

Except where otherwise noted, the following facts are taken from the Complaint and accepted as true for the purposes of this motion.  Xyrem is a drug that has been approved by the FDA for the treatment of two conditions experienced by narcolepsy patients.  *See United States v. Caronia*, 703 F.3d 149, 155 (2d Cir. 2012).  The first manufacturer of Xyrem was Orphan.  After Jazz acquired Orphan, Xyrem was manufactured by Jazz.  Caronia was employed by both Orphan and Jazz as a "sales representative" for Xyrem in "New York City/Long Island."  Compl. ¶ 19.

In 2005, the Federal Bureau of Investigation ("FBI") and the Office of the Inspector General of the Department of Health and Human Services ("HHS") commenced an investigation into the off-label promotion of Xyrem after a *qui tam* complaint was filed against Orphan.  Afterwards, the government began a criminal investigation into Orphan.  The investigation focused on meeting at which Caronia

promoted the off-label use of Xyrem and led to a criminal action against Dr. Peter Gleason ("Gleason"). *See* Compl., *United States v. Gleason*, No. 06-cr-229 (E.D.N.Y. Feb. 28, 2006), Dkt. No. 1. During the investigation, Caronia was interviewed at his home by Giambalvo and Shapiro on March 22, 2006.

On July 13, 2007, Orphan entered into a plea agreement to resolve criminal misbranding charges against it under the Food, Drug, and Cosmetic Act ("FDCA") relating to Xyrem. At its plea hearing, an Orphan representative allocuted that:

> . . . Orphan Medical, together with certain of its sales representatives and employees . . . engaged in a scheme to help Orphan Medical expand the market with a prescription medication, Xyrem, by promoting that drug to physicians for unapproved or off-label indications.
>
> Among other things, certain Orphan Medical sales representatives made sales calls on physicians who did not specialize in treating narcolepsy, in order to promote Xyrem, at least in part for the treatment of conditions not related to the FDA-approved medical indication.

Compl. ¶ 37. That same day, Jazz executed a non-prosecution agreement with the government in which it agreed to cooperate with the investigation and pay the $17,000,000.00 fine and restitution resulting from Orphan's guilty plea. In connection with the non-prosecution agreement, Jazz "provide[d] documents, information and testimony to abet the [g]overnment's prosecution of Caronia." *Id.* ¶ 31. Jazz also acknowledged that its "remediable and proactive measures included replacing sales personnel who engaged in the off-label promotion." *Id.* (internal quotations omitted).

4

Jazz terminated Caronia's employment "a few weeks earlier for the same promotion activity that Jazz has accepted responsibility for and agreed was criminal under the FDCA." *Id.* ¶ 32 (internal quotations omitted).

Giambalvo recommended to the United States that Caronia be prosecuted. On July 25, 2007, Caronia was charged in a superceding indictment with conspiring with Gleason to introduce Xyrem as a misbranded drug into interstate commerce. A federal arrest warrant was issued on August 2, 2007, and Caronia was arrested by Shapiro on that date. On October 16, 2008, a jury convicted Caronia of conspiracy to introduce a misbranded drug into interstate commerce in violation of 21 U.S.C. §§ 331(a) and 331(a)(1). On December 3, 2012, the Second Circuit vacated Caronia's conviction on the ground that he was convicted for engaging in speech – promoting off-label uses of Xyrem – in violation of his First Amendment rights. *See Caronia*, 703 F.3d at 169. Plaintiffs filed the instant action on November 21, 2013.

## II. Standards of Review

Rule 12(b)(1) provides for dismissal when a "court lacks the statutory or constitutional power to adjudicate a case." *Sokolowski v. Metro. Trans. Auth.*, 723 F.3d 187, 190 (2d. Cir. 2013). On a Rule 12(b)(1) motion to dismiss, "a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

5

The standards for dismissal under Rule 12(b)(1) and Rule 12(b)(6) are "substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Court "take[s] the factual allegations of the complaint to be true and draw[s] all reasonable inferences in the plaintiff's favor." *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

## III. Federal Claims

Plaintiffs assert two distinct types of federal causes of action that are both predicated upon the following alleged conduct of the federal agent defendants: (1) Giambalvo and Shapiro interrogated Caronia on March 22, 2006; (2) Giambalvo recommended that the Caronia be prosecuted; and (3) Shapiro arrested Caronia on August 2, 2007. First, Plaintiffs maintain six tort claims against the United States pursuant to the FTCA's waiver of sovereign immunity: (1) negligence; (2) false imprisonment; (3) false arrest; (4) abuse of process; (5) tortious interference with employment; (6) and malicious prosecution.[3] *See* 28 U.S.C. § 1346(b)(1) (granting federal courts jurisdiction over "civil actions on claims against the United States, for

---

[3] The Complaint also asserted a *prima facie tort* claim that plaintiffs withdrew in their opposition brief. *See* Opp'n Br. at 32.

money damages, . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ."). Plaintiffs further sue the federal agent defendants in their individual capacities pursuant to *Bivens*. *See Ibrahim v. United States*, F. Supp. 2d 27, 31 (E.D.N.Y. 2012) ("*Bivens* [] authorizes suits for monetary damages against federal officers sued in their individual capacities."). For the reasons that follow, each of these theories of liability fail.

A. **Claims Under the FTCA**

1. **Administrative Exhaustion**

To state a claim under the FTCA, a plaintiff "must comply with several strictly construed prerequisites." *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999). The FTCA provides that before a tort action can be commenced against the United States, a plaintiff must have "presented [a] claim to the appropriate [f]ederal agency, and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). The FTCA's regulations specify that a claim "shall be presented to the [f]ederal agency whose activities gave rise to the claim." 28 C.F.R. § 14.2(b)(1). Those regulations further provide that if the agency does not respond "within six months," a plaintiff "may assume [the] claim is denied" and file an action in federal court. *Id.* § 543.32(I). "The FTCA requires that a claimant exhaust all administrative

7

remedies before filing a complaint in federal court." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005). "Unless a plaintiff complies with that requirement, a district court lacks subject matter jurisdiction over a plaintiff's FTCA claim." *Johnson*, 189 F.3d at 189.

Plaintiffs' FTCA claims are based on Shapiro and Giambalvo's conduct in the underlying federal investigation. Prior to initiating this action, plaintiffs served administrative claims on both the FBI and HHS – the federal agencies that employ Shapiro and Giambalvo, respectively – on August 2, 2013. By letter dated August 26, 2013, HHS informed plaintiffs that it denied the claim they submitted to it. Consequently, plaintiffs satisfied the FTCA's administrative exhaustion requirement with regard to the claim presented to HHS.

However, plaintiffs have failed to demonstrate that they exhausted their administrative remedies for the claim presented to the FBI. See *McClenton v. Menifee*, No. 05-CV-2844, 2006 WL 2474872, at *16 (S.D.N.Y. Aug. 22, 2008) ("The burden is on the plaintiff to plead and prove compliance with the FTCA's administrative exhaustion requirement."). Plaintiffs filed this action on November 21, 2013, three months after they served their claim to the FBI. Plaintiffs have not proved – much less alleged – that the FBI denied their claim. Since plaintiffs commenced this action both before the FBI responded, and prior to the expiration of the six-month waiting period,

they failed to satisfy the exhaustion rule with respect to the FBI. As such, the Court lacks subject matter jurisdiction over the FTCA claims to the extent they are based on Shapiro's alleged conduct during the FBI investigation.[4] *See Walia v. Napolitano*, 986 F. Supp. 2d 169, 185 (E.D.N.Y. 2013) ("[T]he FTCA administrative exhaustion rule is a jurisdictional requirement which cannot be waived.").

## 2. FTCA Claims Based on Giambalvo's Conduct

Because plaintiffs did not satisfy the exhaustion requirement for the claim submitted to the FBI, the Court only analyzes Giambalvo's conduct in the HHS investigation in evaluating plaintiffs' FCTA claims.[5] For the reasons discussed below, the Complaint's allegations regarding Giambalvo's investigative activities fail to state an actionable claim against the United States.

---

[4] Plaintiffs cite 28 C.F.R. §§ 14.2(b)(2) and (b)(3) in arguing that HHS's denial of the administrative claim they submitted to that agency was sufficient to satisfy the exhaustion rule for the claim they submitted to the FBI. The Court disagrees. Subsection (b)(2) addresses the situation where a claim filed with only one agency may concern another agency, and sets forth a process for designating one agency to decide the merits of the claim and advise the claimant of the designation. In this case, plaintiffs submitted claims to both the FBI and HHS, and neither agency was designated within the meaning of subsection (b)(2). Subsection (b)(3) applies where "a claim arising from an incident is presented to more than one Federal agency, without any indication that more than one agency is involved . . . ." 28 C.F.R. § 14.2(b)(3). Here, plaintiffs' claim referred to both the FBI and HHS, thus indicating that more than one agency is involved. Consequently, 28 C.F.R. §§ 14.2(b)(2) and (b)(3) are inapposite.

[5] The Complaint alleges that federal agent defendants John Does 1, 2, and 3 "are/were employees of HHS and/or the FBI who participated in the investigation and prosecution of Caronia." Compl. ¶ 12. However, plaintiffs fail to make a single factual allegation against them. Accordingly, there is no alleged conduct attributable to these defendants for the Court to consider in assessing the viability of plaintiffs' FTCA claims.

### i. Statute of Limitations

The federal defendants contend that all of the FTCA claims based upon Giambalvo's conduct – except for the malicious prosecution claim – should be dismissed as untimely. The Court agrees. FTCA claims must be served on the appropriate federal agency within two years of accrual. *See* 28 U.S.C. § 2401(b). "The date on which an FTCA claim accrues is determined as a matter of federal law," *Syms v. Olin Corp.*, 408 F.3d 95, 107 (2d Cir. 2005). Federal law states that FTCA claims "accrue either at the time of injury or when the plaintiff has, or with reasonable diligence should have, discovered the facts critical to his or her injury, whichever is earlier." *Johnson*, 189 F.3d at 189; *see also Valdez ex. rel Donely v. United States*, 518 F.3d 173, 177 (2d Cir. 2008) ("A claim under the [FTCA] accrues on the date that a plaintiff discovers that he has been injured.").

Plaintiffs presented their administrative claim to HHS on August 2, 2013. Consequently, only those claims that accrued on or after August 2, 2011 are timely. Here, it is clear that plaintiffs were aware of the facts critical to their non-malicious prosecution FTCA claims – and that those claims therefore accrued – well in advance of August 2, 2011. The tortious interference with employment claim is based on the termination of Caronia's employment in June 2007. The false arrest and false imprisonment claims are premised on Caronia's arrest in August 2007. The abuse of

process claim is founded on Caronia's prosecution, which ended in October 2008. Finally, while plaintiffs have failed to articulate a basis for their negligence claim, reading the allegations in the Complaint favorably, this cause of action presumably entails "HHS investigative and prosecution activities" that occurred between January 2005 and October 2008. Compl. ¶ 49. Since the non-malicious prosecution FTCA claims accrued before August 2, 2011, they are dismissed as untimely.

### ii. Malicious Prosecution

Plaintiffs' malicious prosecution claim under the FTCA arises out of "the investigation and prosecution" into the off-label promotion of Xyrem. *Id.* ¶ 1. Preliminarily, the Court notes that – unlike plaintiffs' other FTCA claims – their malicious prosecution claim is timely because, for FTCA accrual purposes, a cause of action for malicious prosecution accrues when a criminal proceeding terminates in a plaintiff's favor. *See DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996). The Second Circuit vacated Caronia's conviction on December 3, 2012. Because plaintiffs filed their administrative claim with HHS within two years of that date, the malicious prosecution claim is not barred by the FTCA's statute of limitations.

Nevertheless, plaintiffs' malicious prosecution claim is precluded by the "discretionary function exception" to the FTCA. *See* 28 U.S.C. 2680(a). While the Second Circuit has yet to formally address the issue, a number of circuit courts have

found that the discretionary function exception bars malicious prosecution claims against government prosecutors based on the decision to indict and prosecute an individual.[6] *See Gray v. Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983) ("Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception."); *Smith v. United States*, 375 F.2d 243, 248 (5th Cir. 1967) ("[Section] 2680(a) exempts the government from liability for exercising the discretion inherent in the prosecutorial function of the Attorney General . . . .").

District courts in this circuit have routinely reached the same conclusion. *See Barone v. United States*, No. 12-CV-4103, 2014 WL 4467780, at *10 (S.D.N.Y. Sept. 10, 2014) ("There is no question that the United States is immune from liability for claims arising from [the prosecutor's] decision to prosecute plaintiff."); *Petitio v. Hill*, No. 04-CV-4493, 2007 WL 1016890, at *14 (E.D.N.Y. Mar. 26, 2007) ("The discretionary function exception to the Government's waiver of sovereign immunity under the FTCA further precludes plaintiff's tort claims insofar as they arise from a

---

[6] The Second Circuit implied in an unpublished summary order that the discretionary function exception proscribes malicious prosecution claims based on a prosecutor's decision to prosecute. See *Wang v. United States*, 61 F. App'x 757, 759 n. 1 (2d Cir. 2003) ("Plaintiffs concede on appeal that the conduct of the prosecuting attorneys is shielded by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), from imputing liability to the United States. Having abandoned this avenue on appeal, we need not address it in this order.").

prosecutor's decision to indict and prosecute."); *Wang v. United States*, 01-CV-1326, 2001 WL 1297793, at *3 (S.D.N.Y. Oct. 25, 2001) ("It is well-settled that the discretionary tort exception encompasses a prosecutor's decision to prosecute, even if that decision constitutes an abuse of prosecutorial discretion."); *Morales v. United States*, No. 94-CV-4865, 1997 WL 285002, at *1 (S.D.N.Y. May 29, 1997) ("The discretionary function exception to the FTCA bars claims of malicious prosecution against government prosecutors who, in their discretion, decide to prosecute an individual . . . .").

Courts have further recognized that the discretionary function exception bars claims of malicious prosecution "against investigative and law enforcement agents aiding in the investigation to determine whether to prosecute." *Id.* (citing *Moore v. Valder*, 65 F.3d 189, 196-97 (D.C. Cir. 1995)). However, it "does not protect investigative and law enforcement agents from such claims where the actions of those agents are 'sufficiently separable' from the 'protected discretionary decision' to prosecute." *Morales*, 1997 WL 285002, at *1 (quoting *Moore*, 65 F.3d at 196-97). "While courts have struggled to articulate clear rules for identifying conduct that is 'sufficiently separable[,]' . . . allegations based on the quality of the investigation generally do not give rise to FTCA claims." *Rhodes v. United States*, No. 07-CV-00470S, 2012 WL 777336, at *11 (W.D.N.Y. Mar. 7, 2012) (internal citations and quotations omitted).

Plaintiffs allege that Giambalvo "interrogated" Caronia "as part of the

government's investigation" and "recommended to the United States that Caronia be prosecuted." Compl. ¶ 22. Such conduct is not sufficiently dissociable from the decision to prosecute Caronia as to fall outside the discretionary function exception. *Wang*, 2001 WL 1297793, at *4 ("To be actionable as malicious prosecution, the investigator's conduct must be independent or quasi-independent from the non-actionable decision to prosecute and must constitute the kind of wrongful conduct that is designed to corrupt the fairness of a prosecution."). To the contrary, these investigative activities are inextricably linked to the non-actionable decision to prosecute. *See Gray*, 712 F.2d at 516 ("[T]he conduct as alleged in this case is insufficiently separable from the discretionary decision to initiate prosecution and therefore cannot by itself support suit under the FTCA."); *In Matter of Grand Jury Minutes in United States v. Tam*, No. 96-CV-2810, 1997 WL 21369, at *3 (E.D.N.Y. Jan. 9, 1997) ("Where an allegation of improper investigatory conduct is tied to the decision to prosecute . . . the discretionary function exception precludes suit against the government."). Thus, the FTCA malicious prosecution claim is proscribed by the discretionary function exception.

### B. *Bivens* Claims Against the Individual Federal Agents

Plaintiffs' *Bivens* claims against the individual federal agent defendants are founded on alleged violations of Caronia's rights under the First, Fourth, and Fifth

Amendments, as well as "Article 1, § 9, cl. 3 of the Constitution."[7] Compl. ¶¶ 66-69. The statute of limitations for a *Bivens* action arising in New York is three-years. *See Kronisch v. United States*, 150 F.3d 112, 123 (2d Cir. 1998) ("Federal courts in New York apply a three-year statute of limitations period to *Bivens* claims."). Similar to FTCA claims, "[f]ederal law governs the question of when [a *Bivens*] claim accrues." *Griffin v. Doe*, 71 F. Supp. 3d 306, 317 (S.D.N.Y. 2014). Pursuant to federal law, a *Bivens* claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999) (internal citation and quotations omitted).

The *Bivens* claims against the federal agent defendants arise out of the same investigative conduct underlying the FTCA claims. However, all of this conduct occurred in 2006 and 2007.[8] As such, the limitations period on the *Bivens* claims accrued – and expired – well before this action was commenced in November 2013. Consequently, they are dismissed as time-barred.

## IV. State Claims Against Jazz and Orphan

Plaintiffs bring the following state tort claims against Jazz and Orphan: (1)

---

[7] Art. 1, § 9, cl. 3 is the constitutional prohibition against federal *ex post facto* laws.

[8] While plaintiffs do not allege the date on which Giambalvo recommended that Caronia be prosecuted, it would have had to precede Caronia's indictment on July 25, 2007. *See Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) ("Once the grand jury indicted [], control of the prosecution passed to the prosecutor and was no longer within the agent's authority.").

15

contractual interference; (2) breach of the implied covenant of good faith and fair dealing; (3) defamation; (4) malicious prosecution; and (5) civil conspiracy. As discussed below, all of these claims are time-barred, except for the malicious prosecution and civil conspiracy claims, which are without merit. Accordingly, the claims against these defendants are also dismissed.[9]

### A. Contractual Interference

To state a contractual interference claim under New York law, a plaintiff must establish (1) a valid contract between itself and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract; and (4) damages. *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 82 (S.D.N.Y. 2012). Plaintiff have not alleged (1) the existence of a third-party contract, or (2) that Jazz or Orphan intended a contractual breach. This pleading deficiency, standing alone, warrants dismissal of the contractual interference claim.

Regardless, the claim is time-barred. New York law imposes a three-year limitations period on contractual interference claims, *see* N.Y. C.P.L.R. § 214(4), which starts to run "at the time the injury is sustained." *Ferring BV v. Allergan, Inc.*, 932 F. Supp. 2d 493, 509 (S.D.N.Y. 2013). To support their contractual interference claim,

---

[9] The Complaint also alleged intentional infliction of emotional distress, negligent infliction of emotional distress, and discharge in violation of public policy claims against Jazz and Orphan. Plaintiffs voluntarily dismissed those claims with prejudice. *See* Sur-Reply at 2.

Plaintiffs maintain that Caronia's "career . . . [was] destroyed by Jazz's termination of his employment," Compl. ¶ 41, and that Caronia "was stigmatized . . . in the pharmaceutical industry as a result of Jazz's accusations that he violated the criminal provisions of the FDCA." *Id.* ¶ 81. However, Caronia was fired in June 2007. Moreover, Jazz's statements as to Caronia's misconduct were made in the course of Caronia's prosecution, which ended in October 2008. Even using the later of these dates, the limitations period for the contractual interference claim expired in October 2011. Since this action was not filed until over two years later, the contractual interference claim is dismissed as time-barred.

### B. Implied Covenant of Good Faith and Fair Dealing

Under New York law, a breach of the implied covenant of good faith and fair dealing cause of action is subject to a six-year limitations period, s*ee* N.Y. C.P.L.R. § 213(2), which accrues at the time of the breach. *See V.E.C. Corp. of Delaware v. Hilliard*, 896 F. Supp. 2d 253, 260 (S.D.N.Y. 2012). Plaintiffs allege that the breach occurred when Caronia was fired in June 2007. Consequently, the implied covenant claim expired in June 2013. As this action was not brought until six months later, the implied covenant claim is dismissed as untimely.

### C. Defamation

Plaintiffs allege that "Jazz publicized and communicated to third-parties that

Caronia was guilty of a federal crime when he promoted the off-label use of Xyrem." Compl. ¶ 101. Reading the allegations in the Complaint charitably, plaintiffs are presumably claiming that Jazz made defamatory statements during the government's prosecution of Caronia, which concluded in October 2008. However, the limitations period for a defamation claim based on these allegations expired – at the latest – in October 2009. *See Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303, 305 (S.D.N.Y. 2014) ("New York imposes a one-year statute of limitations on defamation claims."); *see also* N.Y. C.P.L.R. § 215(3). Because this action was not commenced until over four years later, the defamation claim is dismissed as untimely.

### D. Malicious Prosecution

To state a malicious prosecution claim under New York law, a plaintiff must establish: "(1) the initiation of a proceeding, (2) its termination favorably to [the] plaintiff, (3) lack of probable cause, and (4) malice." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). For a private entity – like Jazz or Orphan – to "initiate" a criminal proceeding, it must "play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000). Here, plaintiffs allege that Jazz gave the government "information, documents and testimony" that was used in Caronia's trial. Compl. ¶ 83. Such an averment fails to satisfy the initiation element. *See Present*

18

*v. Avon Prods., Inc.*, 253 A.D.2d 183, 189, 687 N.Y.S.2d 330 (1st Dep't 1999) ("One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding."). As such, the malicious prosecution claim against Jazz and Orphan is dismissed.

### E. Civil Conspiracy

Plaintiffs allege that "Jazz conspired with the United States in the malicious prosecution claim against Caronia" and "to violate Caronia's rights under the Constitution." Compl. ¶ 107. "New York law only recognizes an action for civil conspiracy if it is connected to a separate underlying tort." *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006); *see also Reich v. Lopez*, 38 F. Supp. 2d 436, 460 (S.D.N.Y. 2014) ("New York does not recognize civil conspiracy as an independent cause of action."). As the Court discussed earlier in dismissing the other tort claims against Jazz and Orphan, plaintiffs have failed to allege that either Jazz or Orphan committed an independent tort against them. Thus, the civil conspiracy claim is dismissed.[10]

---

[10] For the first time in their opposition brief, plaintiffs assert a *prima facie* tort claim against Jazz based presumably on the same events underlying their dismissed claims. Even if the Court allowed plaintiffs to amend their complaint to add this claim, it would be time-barred. *See Montefusco v. Nassau Cnty.*, 39 F. Supp. 2d 231, 238 n. 4 (E.D.N.Y. 1999) ("The statute of limitations for *prima facie* tort is three years.").

## V. Conclusion

For the foregoing reasons, defendants' motions to dismiss are granted and the Complaint is dismissed.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 13, 2015